## RAINBOW FISHERIES, Inc. v. JACOBSEN.

### THE RAINBOW.

#### Nos. 1453, 1454.

United States District Court
D. Massachusetts.

Feb. 11, 1949.

No. 1453:

Thomas H. Walsh, of Boston, Mass., for libellants.

Bingham, Dana & Gould, of Boston, Mass., for respondent.

No. 1454:

Bingham, Dana & Gould, of Boston, Mass., for claimant.

FORD, District Judge.

There are two cases before this court. (1) A cross-libel (No. 1453) by Rainbow Fisheries, Inc., owner of the fishing vessel Rainbow against Helen L. Jacobsen, administratrix of the estate of Jacob E. Jacobsen, owner of the fishing vessel Acushnet for damage to the Rainbow and (2) a petition (No. 1454) for exoneration from or limitation of liability by Rainbow Fisheries, Inc., against Helen L. Jacobsen, administratrix as stated and a claim in this proceeding by Helen L. Jacobsen, administratrix, for damage to the Acushnet. The cases arise out of a collision between the Rainbow and Acushnet on July 10, 1947. In Rainbow's cross-libel, respondent Helen L. Jacobsen, administratrix, also pleads her right to limit her liability as administratrix to the value of the remnants and

wreckage of the Acushnet and her pending freight following the collision.

## Findings of Fact.

The collision between the Rainbow and Acushnet occurred about 10 a. m., July 10, 1947, in a dense fog at a point approximately 125 miles east one-half south of Pollock Rip Light Ship. At the time the sea was calm and the wind negligible. Both vessels had been dredging for scallops prior to the collision. When the vessels came in sight of each other they were "steaming" on courses intersecting at approximately right angles, with no gear overboard from either vessel. The Rainbow's course was north, Acushnet's east. The Rainbow was on Acushnet's starboard. The Rainbow was 65 feet in length.

Captain Syre of the Rainbow testified that at the time of the collision he was stationed in the pilot house in charge of the navigation of the Rainbow and the latter was jogging along to make the next set after taking up the drags while the vessel was stopped with its engines idling. He testified that at that time the vessel was proceeding at a speed of about two or three knots; that the Rainbow's maximum speed was eight knots; that one Andersen, a seaman, was stationed as a lookout on the port bow about seven or eight feet from the stem. He testified that before he started to steam he blew his whistle one long blast and that two minutes after he started and ten seconds before the collision he saw the Acushnet for the first time on his port bow at a right angle to the Rainbow. At the same moment, he testified, the lookout gave warning of its presence. The captain was stationed at the window of the pilot house. The captain stated that when he first saw the Acushnet she was on his port bow 100 feet away at about 45 degrees from his position in the pilot house. He also testified that the range of visibility was approximately 100 feet. The captain further testified that between the time he started to steam and the point of collision he blew two or three blasts of the whistle. He gave no estimate of Acushnet's speed. The captain also testified that when he first observed the Acushnet he put his wheel hard to starboard to clear the Acushnet but the Rainbow failed to respond because of lack of speed. He also testified that the short distance traversed before the collision prevented further effort to change his course to starboard. He stated he saw three men aboard the Acushnet, two in the scallop box on the starboard side and one on deck amidships alongside the scallop drags. He observed nobody on the bow of the Acushnet. The Acushnet struck the Rainbow at a right angle (about 40 feet aft of the Rainbow bow) within seconds after first being observed by the captain. This fact was not disputed. When the Acushnet hit she "lifted up on our side, oh, inside and above the rail somewhat * * *. When she hit the bow she lifted up on the bow and slid off." She slid directly back as evidenced by the photographs of the damage to the Rainbow. He testified the stem of the Acushnet, a little under the water line came up on Rainbow's deck. Rainbow's iron guard, flush with its deck, whose purpose was to protect the vessel, was badly smashed at the point of impact by the Acushnet. The freeboard between this guard and the water was 22 inches at the time of the collision. The rail of the Rainbow was two to three feet above its deck. This rail was also smashed.

Captain Syre testified he was president and director and majority stockholder of the corporation which owned the Rainbow and, as stated, was in charge of the navigation at the time of the collision.

One Andersen, a member of the Rainbow's crew, testified he was serving as lookout on the Rainbow at the time of the collision and was stationed ten feet from the stem; that he saw the Acushnet 75 feet on the port side of the Rainbow before she struck. He testified further and drew a diagram illustrating that when he first saw the Acushnet she bore "about between the forward hatch and the doghouse; * * * in front of the doghouse on the port side * * *." Also he stated the doghouse was about ten feet from the bow of the Rainbow. He stated that when he saw the Acushnet he hollered out "there is a boat" and ran amidships. He corroborated the captain's testimony with respect to most of the matters set out and further testified that

he heard no whistles from the Acushnet from the time he first saw her up to the time of the collision. He also testified he heard no whistles from the Acushnet for ten minutes prior to the collision. He testified the Rainbow blew a long blast every minute or so. He stated the first time he saw the Acushnet she was just coming out of the fog. He agreed substantially with the captain on the range of visibility. He stated that when the Acushnet struck she "sort of went up on deck" about four feet; that ten to fifteen seconds elapsed between the time he first saw the Acushnet and the collision and at that time the Rainbow was jogging along.

Other members of the Rainbow's crew testified they heard the blasts every minute from Rainbow's whistle but none from the Acushnet before the collision. Also they testified the Acushnet rode the rail of the Rainbow at the time of the collision for a distance of three to four feet.

### Respondent's Testimony.

Captain Lund of the Acushnet testified he went off watch at 9 a. m., on the date of the collision. Kenneth Jacobsen, son of Helen L. Jacobsen, the respondent, engineer and mate aboard the Acushnet took his place in navigating the boat. The latter was instructed by the captain that if he got no fish in the next set he was to steam eastward two hours and find a new spot. No fish were caught in this last set. At the time of the collision the captain was asleep in his bunk and knew nothing of the facts directly appertaining to the collision.

The mate Jacobsen testified he was in the pilot house of the Acushnet for one-half hour before the collision and was navigating the vessel; that the vessel had been overhauled generally before the present trip (Captain Lund and the respondent affirmed this) and was in good condition. He stated, and there is no dispute about it, that on the morning of the collision there was a thick fog; that the Acushnet stopped fishing at 9:40 a. m., the vessel was stopped, with the engine idling and the dredge hauled in; that he went back to the pilot house, gave one blast, put his clutch in and the vessel started eastward in accordance with the captain's instructions "and two

minutes later I was in collision with the Rainbow." (At another point in his testimony he stated it was a minute and a half.) He estimated the speed at which he was proceeding as one to two knots. He further stated he heard no whistles from the Rainbow until he was about four feet away from her; that was a long blast. He testified the Rainbow bore four points (45 degrees) on the Acushnet's bow when he first saw her, she was going north and "coming across our bow." He estimated the distance between the Acushnet and Rainbow when he first saw the latter as 75 feet. He stated that when he first saw the Rainbow he threw his wheel hard over to starboard to clear the Rainbow's stern, reversed his engine, and was backing full speed at the time of the collision. The mate estimated the speed of the Rainbow at five or six miles an hour and the range of visibility 75 or 80 feet. The mate testified that all the damage on the Acushnet was on the stem about 4½ feet down from the top and about a foot or two up from the water line.

This witness testifying before the Coast Guard authorities immediately after the collision stated he could not judge the speed of the Acushnet before the collision. He also stated before these authorities that he "just put the boat into gear to go ahead * * *" and "I should say a couple of minutes later I sighted the Rainbow right ahead."

Although this witness, in his direct testimony, testified he was a first-class engineer with the Coast Guard during World War II, it turned out in cross-examination that he merely held the rating of machinist's mate. Also on cross-examination he stated that at the time of the collision one Harry Brown was stationed as a lookout on the starboard side by the doghouse. When questioned by the Coast Guard authorities with respect to a lookout he stated "the two men up forward of the drags always lookout and listen." He mentioned no names.

It was agreed that the maximum speed of the Acushnet was 7½ miles per hour.

One Brown, a member of the Acushnet's crew, testified he was working on Acushnet's starboard side near the bow at 9:30 a. m. when the Acushnet started to steam

and he went forward to the doghouse to be a lookout and "in a minute I saw something in the fog on the right." He testified he hollered to the captain. He stated it was a minute and a half after the Acushnet was put into gear that he saw the Rainbow about 65 or 70 feet four points (45 degrees) off Acushnet's starboard bow and "it looked as though she was going across our bow." Witness estimated the Rainbow's speed at four miles per hour. Witness estimated speed of the Acushnet at two to two and a half miles per hour and stated that when the Acushnet started to steam her whistle was blown by the mate. This witness stated that at the time of the collision the Acushnet "wasn't moving. If she was, she was moving very little * * * not very much." He testified that the bow of the Acushnet slid up onto the deck of the Rainbow about two or three feet and then slid off.

Valentine, a member of Acushnet's crew, testified "I heard a holler that there was a boat on the starboard side, and at that time I turned around, and we were almost in contact with the Rainbow's bow."

Valentine and one Nadeau, another member of the crew, estimated that about a minute and a half elapsed between the time the Acushnet started forward and when the Rainbow was sighted and they heard the Acushnet give one long blast of her whistle before she started to steam. Nadeau testified that Rainbow's speed was between six or seven miles per hour; that of the Acushnet two to two and a half knots. Valentine offered no estimate of the relative speeds of the vessels. Nadeau further testified that from the time he first saw the Rainbow to the moment of collision only one second elapsed and he heard no whistles from either boat. At another point he testified the Rainbow was 75 feet away when he first saw it; that he turned around, braced himself and the collision immediately took place. This witness testified before the Coast Guard as follows: "After he gave that blast on the fog horn I put my wrench down and walked across to the starboard side * * * and just as I looked up I seen the Rainbow coming * * * and the engineer put it in reverse * * *. He gave it all she had; but we were still too near one another. It was on top of us." The witness also testified that the distance he walked across the deck was six feet. Later he stated it was a minute and a half between the time the Acushnet started to steam and the collision. Nadeau also testified he heard no whistles from the Rainbow and one blast from the Acushnet when the latter started to steam. This witness did not see the Acushnet ride up over the rail of the Rainbow.

One Chaples, a member of the Acushnet crew, testified he heard one blast of Acushnet's whistle after the drags were taken up; that it was a minute and a half later, when he heard the bow watch call out, that he first observed the Rainbow 75 feet away and five seconds later the vessels came together. He stated he heard a long blast of Rainbow's whistle just before the Acushnet hit. He stated that before the collision the Acushnet was making two miles and the Rainbow five. He testified he was able to judge these speeds in the space of a few seconds. This witness hung onto the rigging when he saw a collision was imminent.

Jacob E. Jacobsen, a brother of the mate of the Acushnet and a passenger aboard the vessel testified to the long blast from Acushnet's whistle before she started ahead.

The only other material testimony was adduced by the respondent to the effect that she had entrusted the operation of the Acushnet to her son Kenneth Jacobsen, the mate and engineer of the Acushnet, since her husband's death which preceded the collision about six months, and on the critical trip the vessel was in command of Captain Lund. She testified she gave no instructions with respect to navigational matters.

I have set forth the material evidence in substantially complete detail in order to point out how much the true version of the facts surrounding the collision of the vessels depends on the credibility of the witnesses.

After a careful review of the entire evidence, including photographs of the vessels showing the damage to each taken immediately after the collision in this case, the following facts and conclusions are made.

### Speed and Fog.

I must say at the outset that at the trial I was a bit skeptical of the credibility of the witnesses for the respondent. I was much more favorably impressed by the testimony of Captain Syre and the witnesses for the petitioner. For example, Mate Jacobsen attempted to impress the court with his efficiency by a deliberate misstatement that he served in World War II as a first-class engineer when, in truth, he was merely a machinist's mate. The mate stated before the Coast Guard authorities that he sighted the Rainbow a couple of minutes after he started his boat ahead. At the trial, on cross-examination, he stated that he steamed a minute and a half before he hit the Rainbow and stated also that he told the Coast Guard authorities that he sighted the Rainbow within a couple of minutes. The change in his testimony was evidently made by him for the purpose of taking care of the whistle requirements, which will be discussed later, since after he sighted the Rainbow there were 70 to 75 feet to traverse before the collision. All the members of the crew of the Acushnet corroborated Jacobsen in this minute and a half estimate of time. I shall refer to this later.

Article 16 of the International Rules, 33 U.S.C.A. § 92 reads, in part, as follows: "Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions. * *"

At what speed were these vessels proceeding just before the collision? The evidence is conflicting. The circumstances will help.

The Rainbow was proceeding merely for the purpose of dropping its drags for another set. It is not reasonable to suppose she would do more than jog, just as Captain Syre said she did just before the collision. The Acushnet was, under instructions from Captain Lund, on her way to a place two hours sailing to the east before she intended to drop her drags. Mate Jacobsen testified he was proceeding at a speed between one and two miles per hour. (To the Coast Guard Jacobsen stated he could not judge the speed of the Acushnet.) It is true that members of the crew, three in addition to Jacobsen, substantially corroborated this testimony, but this court was not impressed by their estimate of the speed of the Acushnet. At best there were not more than ten seconds within which these men could observe speeds. Two of them seeing a collision imminent jumped for the rigging to hang on. It is hard to believe that these men could give any accurate estimate of speed. One of them, hanging to the rigging, estimated the speed in the short space of time by the noise of the water past Acushnet's bow. It is fairly inferable that this witness was giving no attention under the conditions to the movement of water past the bow. The tendency of the testimony of the respondent's witnesses to follow a pattern was seen in their evidence concerning the speed of the Rainbow. The mate and two of the four members of the crew stated the Rainbow's speed to be between five to seven miles an hour (Rainbow's maximum was eight); one stated it was four miles per hour. The impression this court got hearing and observing these witnesses and taking into consideration the circumstances surrounding the collision was that they had not sufficient time to make any reliable estimate of speeds; they were concerned mostly with preserving their safety; a commendable pursuit under the circumstances.

Mate Jacobsen, as seen above, testified that at the time of the collision his engine was in reverse and he "was backing full speed astern." This could hardly be so. I cannot credit this. The evidence showed that when the Acushnet hit, her stem slid up on the Rainbow's deck for several feet. Brown, Acushnet's lookout, according to Acushnet's witnesses, agreed that this was the fact. I find it was. How the Acushnet could slide up on Rainbow's deck with the Acushnet backing full speed astern is hard for the court to understand. I find she was moving forward when she hit and the force of the blow showed she was proceeding much faster than two miles an hour. In fact the Acushnet hit with such force that not only did she penetrate the Rainbow's rail and ride up the latter's deck but she rode up with such force that she ripped her stem for a distance of about

four feet above her water line and in all probability (not discernible in the photographs) for some distance not ascertainable below the water line causing her to sink. When the Acushnet hit the Rainbow the evidence conclusively points to the fact she was proceeding at more than what could be termed a moderate rate of speed in a fog. If she had been proceeding at a moderate rate of speed under the conditions there would have been no collision and no such damage caused her as she suffered.

Another circumstance should be referred to. The size of the break on each side of the Acushnet's stem (a ten-inch timber) is the same. If the Rainbow had been proceeding at the speed the respondent's witnesses testified to, the sidewise momentum of the Rainbow would have done considerably more damage to the exposed starboard side of the Acushnet stem. The Acushnet received no appreciable damage from any sidewise momentum of the Rainbow. All her damage was caused when she hit the Rainbow while proceeding at an immoderate speed in a fog.

It will be necessary to discuss the position of the vessels when they emerged from the fog. I believe the witness Andersen, Rainbow's lookout. He was Rainbow's lookout and in far the best position and in my opinion a most reliable witness to note how the vessels bore toward each other. He stated that the bow of the Acushnet was about 75 feet away headed at right angles for a place on the Rainbow between the forward hatch and the doghouse. This would be a point about ten feet from the Rainbow's bow and the Acushnet bore on that point. I find this to be the fact. Mate Jacobsen of the Acushnet confirmed this when he testified before the Coast Guard that he sighted the Rainbow "straight ahead."

From this finding of fact the relative speeds of the two vessels can be determined. The Rainbow was struck 40 feet from its bow. If, as I find, the Acushnet was 75 feet away bearing approximately in a line toward the doghouse, which was, as the fact showed ten feet from Rainbow's bow, then the Rainbow traversed the distance of 30 feet before being struck, while the Acushnet was traversing about 65 feet. (Allowance is made for one-half the beam of Rainbow.) If, as I find, Rainbow's speed was approximately two to three miles an hour, then Acushnet's speed was four to six miles an hour, approximately, or about twice as fast. The force and nature of the impact substantiates this conclusion. That the immoderate speed of the Acushnet contributed to the collision is undeniable.

I reject the testimony of the respondent's witnesses that when the vessels emerged from the fog that the Rainbow bore four points (45 degrees) off the Acushnet's bow. The members of the Acushnet's crew substantially testified to this fact but it appeared stereotyped to this court and I cannot find the Rainbow was in any such direction from the Acushnet when the vessels entered the range of visibility.

I find with respect to the speed of the vessels that the Acushnet was proceeding at an excessive rate of speed under the circumstances. I find the Rainbow was proceeding at a moderate speed.

The court further finds that the Rainbow was justified under the circumstances in continuing ahead on her course. Had the Acushnet been proceeding at a moderate speed, as stated before, the collision in all probability would not have occurred, as the Rainbow had traversed 40 feet beyond the point of intersection of the courses of the vessels and would have cleared the point of contact had the Acushnet been proceeding at Rainbow's speed which I have found to be moderate under the circumstances. I find the excessive speed of the Acushnet was a contributing cause of the collision between the vessels.

### Lookouts.

Both parties argue faulty lookouts. However, in the view I take of this case, no detailed discussion of this aspect is necessary. I have already indicated that Andersen, lookout on the Rainbow, was a proper lookout and I cannot agree with respondent that he was a "faulty" lookout. I find Andersen at all times was a proper lookout. Art. 29, 33 U.S.C.A. § 121.

### Whistles.

I have already stated that I did not believe the testimony of Mate Jacobsen and the crew members of the Acushnet that the Acushnet was moving less than two minutes when the collision occurred. Jacobsen stated in his testimony, "I gave one blast and put my clutch in." Article 15(b) requires of a vessel in a fog under way, but stopped, and having no way upon her, two prolonged blasts at intervals of not more than two minutes, with an interval of about one second between. Article 15(a) requires of a vessel having way upon her a prolonged blast at intervals of not more than two minutes. The Acushnet was stopped in the water at the time it gave one blast and that was the only signal, the evidence showed, that she gave. Before the Coast Guard authorities, Jacobsen stated that he sighted the Rainbow a couple of minutes after the boat started ahead. At the trial an attempt was made to reduce this time to a minute and a half. It is obvious that if two minutes elapsed before the mate sighted the Rainbow, which I find to be the fact, and a lapse of at least ten seconds before the collision, the Acushnet was at fault with respect to the signals required by Article 15(a).[1]

Although the Acushnet was guilty of fault with respect to signals in a fog, yet I cannot conclude that the failure to give the proper signals contributed to the collision. There is no evidence before me to show that if a signal had been given by the Acushnet just as she emerged from the fog (within the required two minutes) the captain of the Rainbow could have done anything with his vessel to avoid the accident.

There was no failure on the part of the Rainbow with respect to signals, nor does the respondent argue in her factual brief that there was. Why the Acushnet did not hear the blasts from the Rainbow's whistle is difficult to explain. Captain Syre testified, and I find it to be the fact, that he blew his fog whistle two or three times during the two or three minutes of steaming before the collision. It is probable that Acushnet's crew was busy performing duties assigned to them to make the vessel ready for a two-hours steaming. There is no other way to account for this failure.

There is another aspect of this case that should be referred to. Assuming that Article 19, 33 U.S.C.A. § 104, applies only when vessels are in sight of each other and not when they are in a fog, The D. S. Gregory, Fed.Cas. No. 4,103; The Parthian, 1 Cir., 55 F. 426, 432; see LaBoyteaux, "The Rules of the Road at Sea," p. 69; Smith's "The Law Relating to the Rule of the Road at Sea", p. 88, then the Rainbow was not at fault in attempting to change its course when it saw a collision was close. Art. 21 Note, 33 U.S.C.A. § 106. In fact the master of the Rainbow did what any prudent master would do in the circumstances.

### Conclusions.

■ The master of the Rainbow committed no fault in the operation of that vessel in its collision with the Acushnet.

The master of the Rainbow committed no fault with respect to a lookout, speed, or in any other particular that contributed to its collision with the Acushnet.

The speed of the Rainbow was moderate, within the meaning of Article 16, under the circumstances that prevailed before and at the time of the collision.

The speed of the Acushnet, under the circumstances of the fog that prevailed, was immoderate and excessive, was in violation of Article 16 of the International Rules and this fault was a contributing cause of the collision.

The Acushnet was also at fault in failing to hear the signals of the Rainbow and reduce her speed and this failure was a contributing cause of the collision.

The Rainbow Fisheries, Inc., may have a decree in No. 1454 exonerating her from liability in her collision with the Acushnet for the reason that the claimant Jacobsen has not sustained the burden of proving the Rainbow was guilty of fault or negligence

---

[1] Title 33 U.S.C.A. § 91. "Sound signals for fog, etc., generally. Art. 15.

\* · \* \* \* \* \*

(a) A steam vessel having way upon her shall sound, at intervals of not more than two minutes, a prolonged blast."

which contributed to the collision and Acushnet's damage.

In No. 1453, Rainbow Fisheries, Inc., is entitled to a decree against the respondent, Helen L. Jacobsen, administratrix of the estate of Jacob E. Jacobsen, for damages, with interest and costs, to the Rainbow in its collision with the Acushnet.

In No. 1453, the cross-respondent Jacobsen, administratrix, was not in any way in privity with the navigation of the Acushnet and is entitled to a decree limiting her liability as administratrix to the value of the remnants, strippings, and wreckage of the Acushnet and her pending freight immediately following the sinking of the Acushnet.